# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### October 2, 2007 Session

## STATE OF TENNESSEE v. JAMES BRADLEY WARNER

**Direct Appeal from the Circuit Court for Obion County**
**No. C06-265    William B. Acree, Jr., Judge**

---

**No. W2007-00065-CCA-R3-CD  - Filed January 9, 2008**

---

An Obion County Circuit Court jury convicted the appellant, James Bradley Warner, of facilitation of theft of property valued between $1000 and $10,000, a Class E felony.  The trial court sentenced him to four years to be served consecutively to an earlier sentence stemming from a parole violation. On appeal, the appellant contends that the evidence is insufficient to support his conviction because the State did not prove that he knew the items were stolen at the time he helped sell them.  Based upon the record and the parties' briefs, we affirm the jury's guilty verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JERRY L. SMITH and ALAN E. GLENN, JJ., joined.

David Hamblen (at trial) and James T. Powell (on appeal), Union City, Tennessee, for the appellant, James Bradley Warner.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kevin McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

James Woods testified that in April 2006, he allowed the appellant and his wife Samantha Warner to stay at his house in Obion County for about one month while the couple was looking for a place to live following an eviction.  During this time, he and his wife also permitted the couple to borrow their vehicles because the appellant and Mrs. Warner had no transportation.  He knew the couple because Mrs. Warner is the daughter of his wife's friend of twenty years.  During the time

that the appellant and Mrs. Warner were staying at his house, Woods opened the trunk of his wife's car and saw two boxes of baseball cards. His wife did not know that the cards were in her trunk, and when Woods checked his baseball card collection in the closet of his study, he found a number of items were missing. He then reported the missing items to the Obion County Sheriff's Office. Woods next saw his missing baseball cards a couple of weeks later at the sheriff's office. At trial, he identified three boxes[1] containing approximately one thousand baseball cards as his missing cards that were recovered by the sheriff's department. The parties stipulated that the value of these baseball cards was between $1,000 and $10,000.

On cross-examination, Mr. Woods testified that shortly before he found the baseball cards in his wife's trunk, he had allowed Mrs. Warner to use his pickup truck to haul boxes of her belongings from her deceased mother's former property. After this, he saw the appellant and Mrs. Warner bring bags and clothing on hangers into his house. He did not see them bring in any boxes. He noted that his truck was empty on the morning following the Warners' use of it.

Edward Cole testified that he owned E.C. Pawn and Gun in Martin, Tennessee. On April 17, 2006, the appellant and Samantha Warner entered his store, asked if he would be interested in buying some baseball cards, and then got the cards from their vehicle. He said that Mrs. Warner had been to his store previously and that he had her information in his computer but that he did not know the appellant. The appellant negotiated with him on the purchase price while Mrs. Warner looked around the store. The appellant told him that he had collected the baseball cards over the years as a personal hobby and discussed their value. The appellant wanted $600 for the cards, but Cole initially offered him $150. The negotiations continued, and the appellant eventually accepted Cole's offer of $200 for the cards and a figurine, some pocket knives, and a CB radio that he was also selling. After buying the cards, Cole placed them in the back of his store separate from other merchandise because he was legally required to hold items for twenty days before reselling them. He said that the sheriff's department took the cards before the twenty-day period expired.

On cross-examination, Cole identified the pawn ticket, which documents the sale of the baseball cards in question. The ticket listed the owner of the baseball cards as Samantha Lee Farrah, which was the information that Cole had for Mrs. Warner. Cole acknowledged that the pawn ticket bore Mrs. Warner's information and signature but explained that he had used Mrs. Warner's name on the ticket because he already had her information in his computer. He did not recall whether the appellant was able to produce identification on that day, but he characterized the sale of the baseball cards as a joint transaction in which the appellant was "the major participant." The appellant told Cole that he was a salesman and was going to negotiate the deal. While he and the appellant talked, Mrs. Warner repeatedly came over to ask if they had made a deal yet. After he and the appellant agreed on $200 as the price, the appellant asked Mrs. Warner if that amount was agreeable to her.

---

[1]The photograph of this exhibit contained in the record reveals that the State produced two white cardboard boxes, each containing five rows of baseball cards, and a cardboard box lid upon which were displayed five individual baseball cards mounted in clear plastic cases and two DVD's.

Bonnie Parham testified that he is a friend of Edward Cole and was in the back of E.C. Pawn and Gun the day that the appellant brought in some baseball cards and other items to sell. He came to the front of the store after the appellant and Cole had begun negotiating a deal. He overheard the appellant tell Cole that he had collected the baseball cards himself over a number of years. Parham said that the appellant's wife was not involved in the sale of the baseball cards. On cross-examination, he agreed that it would not be unusual for a man to believe that he was better at negotiating a sale than a woman.

Deputy Michael Moore of the Obion County Sheriff's Department testified that on April 19, 2006, he responded to a call from James Woods regarding the theft of baseball cards. Deputy Moore went to the Woods' home, where Woods related that he had discovered some baseball cards in the trunk of his wife's car. Woods reported that this was unusual and that, upon checking his baseball card collection, he had found two boxes and some single cards were missing from a closet. Woods stated that Samantha Warner had been driving his wife's car. Deputy Moore began his investigation by talking with Mrs. Warner, who was in jail on other charges. Mrs. Warner first denied knowing anything about the baseball cards. Later that day, he spoke with her a second time at her request, and she told him that the cards were at E.C. Pawn in Martin, Tennessee. The next morning, he and Investigator William Sanford went to the pawn shop and recovered the baseball cards.

On cross-examination, Deputy Moore testified that the second time he spoke with Mrs. Warner, she told him that another person was involved but that she did not want to get that person into trouble. She then told him where the baseball cards were located. Following the recovery of the cards from the pawn shop, Deputy Moore and Investigator Sanford spoke with Mrs. Warner a third time, and she gave a statement. In the statement, she admitted that she stole the cards from the Woods and took them to a pawn shop, where she sold them for $200. Her statement related that the appellant was with her and had helped her carry the cards and make the deal. Mrs. Warner also added that she and the appellant bought lunch, gasoline, and drugs with the proceeds of the sale.

Samantha Warner, the appellant's wife, testified that in April 2006, she was staying with Jim and Maria Woods and driving their vehicles. On the day before the theft of the baseball cards, she borrowed Mr. Woods' truck to collect some items from her previous marriage that were stored at property she had inherited following her mother's death in 2004 and then lost in foreclosure. She had lived at this property for years up until November 2005. The stored items were things she had accumulated over time as well as some items belonging to the appellant. Some of the items had been in a shed on the property for years. Most of the stored items were in boxes, but some were in bags. After she and the appellant loaded the truck, they returned to the Woods' house to ask if they could use the truck to get a second load. They left some clothing at the Woods' house and took the first load to a rented storage unit. They also took a second load of boxes to the storage unit but brought two boxes from that load back to the Woods' home. Mrs. Warner said that she and the appellant were "broke" at this time and that she intended to look through the two boxes to determine whether they contained something that could be pawned.

Mrs. Warner testified that the next morning, she borrowed Mrs. Woods' car to drive the

appellant to his father's house and then she returned to the Woods' home to sort through the boxes. Around 10:30 a.m., she telephoned the appellant, told him that she had found some items they could pawn, and asked him to go with her. After she gathered her things together, she took two boxes of Mr. Woods' baseball cards from a closet and loaded them into the truck. Before she left to get the appellant, she called the pawn shop, and an employee told her that the person who was familiar with baseball cards would arrive around lunchtime. When she picked up the appellant, he was concerned about whether the trip to the pawn shop was worthwhile, and he glanced in the boxes. He asked her where she had gotten the items that she had brought, and she said, "[F]rom the house." She told the appellant that the baseball cards had belonged to her ex-husband and that the other items were things that she had inherited and collected.

Mrs. Warner testified that at the pawn shop, the appellant negotiated the sale because he had been a car salesman for many years. She said that although the appellant did all the talking, she made the final decision when the owner quoted a price. At that point, the appellant said, "It's your stuff. It's up to you," and she said, "That's fine." She then filled out the pawn ticket but was not required to provide her driver's license because the pawn shop owner already had it on file. She did not tell the appellant that the baseball cards were stolen until two days later, which was also the day she spoke with Deputy Moore about the cards. When Deputy Moore asked her about the cards, she told him that she did not want the innocent, meaning the appellant, to get into trouble. She said that the officers were interested in charging both her and the appellant and that she felt pressured to involve him. She later pled guilty to stealing the baseball cards.

On cross-examination, Mrs. Warner testified that during the time she was staying with the Woods, the appellant mostly stayed with his father because she and the appellant were separated. She admitted that both she and the appellant stayed at the Woods' house the night they had moved the boxes from her mother's property because it was around 11:30 p.m. when they returned Mr. Woods' truck. Two days after she and the appellant pawned the baseball cards, she put two more boxes of Mr. Woods' baseball cards into the back of Mrs. Woods' car, but she was arrested on a bench warrant before she could take them to the pawn shop.

On redirect examination, Mrs. Warner stated that on April 17, she pawned a figurine, a CB radio, two knives, and two tools in addition to the baseball cards. Aside from the cards, all of the items came from the boxes she had taken from her mother's property. The pawn shop owner gave her the $200, and she gave the money to the appellant after they left the shop because she did not carry a purse. Prior to the theft of the cards, the appellant and Mr. Woods had talked about baseball cards while watching baseball games on television. The appellant had also had an extensive baseball card collection before she met him. She did not know whether Mr. Woods had ever showed his collection to the appellant. Although the appellant had been charged with theft, the jury convicted him of the lesser included offense of facilitation of theft.

## II. Analysis

The appellant contends that the evidence is insufficient to support his conviction for

facilitation of theft because the State failed to prove that he knew the baseball cards were stolen at the time he helped his wife pawn them. He also argues that the State relied upon circumstantial evidence to convict him but failed to exclude every reasonable hypothesis save that of his guilt. Specifically, he maintains that his wife's testimony that she told him the baseball cards had belonged to her ex-husband provided a reasonable explanation that was not negated by the pawn shop owner's testimony that the appellant negotiated the sale of the cards and acted as if they were his.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn. Code Ann. § 39-12-103 (2006). Facilitation of a felony occurs when a defendant knows that "another intends to commit a specific felony" and "knowingly furnishes substantial assistance" in committing that felony. Tenn. Code Ann. § 39-11-403(a) (2006) (also directing that the facilitating defendant is one who lacks "the intent required for criminal responsibility"). In the present case, the appellant asserts that the record is devoid of evidence that he knew his wife had stolen the baseball cards at the time he helped pawn them. The jury may derive a person's intent from both direct and circumstantial evidence. State v. Washington, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983).

Viewing the evidence in the light most favorable to the State, we note that in April 2006, the appellant and his wife were in need of money and were living with the Woods after being evicted. Prior to the incident at issue, the appellant had collected baseball cards and had discussed baseball cards with Mr. Woods. On April 17, the appellant's wife took two boxes of Mr. Woods' baseball cards from a closet, placed them and some other items she intended to pawn in Mr. Woods' truck, and then drove to pick up the appellant. When she came to collect him, the appellant looked over the items she had brought because he was concerned about whether the trip to the pawn shop was worthwhile. Upon their arrival at the pawn shop, the appellant negotiated the sale of the cards and discussed their value. Both Edward Cole and Bonnie Parham testified that the appellant said that the baseball cards were his and that he had collected them over the years. After the couple left the

pawn shop, Mrs. Warner gave the appellant the $200 from the sale, and the couple used the money to buy food, gasoline, and drugs.

The jury is entitled to determine the appellant's knowledge of and intent to aid in a theft from his actions. See State v. Hayes, 7 S.W.3d 52, 57 (Tenn. Crim. App. 1999). In Hayes, the court held the evidence of facilitation of theft to be sufficient when the proof showed that the defendant accompanied the co-defendant to the car dealership, drove their truck off the lot after the co-defendant stole a car during a test drive, and later left fingerprints on the stolen car. Id. In the present case, the jury could surmise that the appellant knew of Mr. Woods' baseball card collection from the discussions they had about baseball cards. It could ascertain that the appellant knew the cards were stolen by his actions in representing to the pawn shop owner that they belonged to him. We conclude that the proof in the present case contained sufficient evidence for the jury to determine that the appellant knew the baseball cards were stolen at the time he and his wife pawned them.

Additionally, the appellant claims that his conviction was based solely upon circumstantial evidence but that the State's proof did not exclude every reasonable hypothesis save that of his guilt. Particularly, he maintains that the State's evidence did not negate his wife's testimony that she told him that the baseball cards had belonged to her ex-husband. When a verdict results from purely circumstantial evidence, the facts and circumstances of the offense "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the [appellant]." State v. Crawford, 225 Tenn. 478, 470 S.W.2d 610, 612 (Tenn. 1971). We disagree with the appellant's assertion that his conviction is based solely upon circumstantial evidence, as the jury heard direct evidence of the appellant's participation in the sale of the cards. We agree, though, that the present jury had to determine the element of intent from circumstantial evidence, as is often the case. "In fact, intent can rarely be shown by direct proof and must, necessarily, be shown by circumstantial evidence." Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973).

Here, the State provided a sufficient basis for the jury to reject Mrs. Warner's testimony about what she told the appellant regarding the origin of the baseball cards. Although the appellant's wife testified that she told him the cards belonged to her ex-husband and came from those items that had been stored at her mother's property, she also testified that she told Deputy Moore that she did not want the innocent, meaning the appellant, to get into trouble. Deputy Moore testified that Mrs. Warner told him she did not want to get the other person involved into trouble. From this evidence, the jury could have ascertained bias on the part of Mrs. Warner. Moreover, the photograph of the boxes of baseball cards in the record shows that the cards were well-maintained in clean, white cardboard boxes and that five of the cards were preserved and displayed in clear plastic cases. The jury could have found the state of the baseball cards to be inconsistent with items that had been in storage in a shed at Mrs. Warner's mother's property for years. In other words, the jury determined the credibility of Mrs. Warner's explanation and was free to reject it in favor of the evidence presented by the State. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990) (holding that questions concerning the credibility of witnesses and the weight to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts). Thus, the evidence is sufficient to support the appellant's conviction.

### III.  Conclusion

Based upon the record and the parties' briefs, we affirm the jury's verdict of guilt.

_____
NORMA McGEE OGLE, JUDGE